UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

RICHARD RITTENHOUSE,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-------------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
21-CV-393 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Richard Rittenhouse commenced the above-captioned action on January 25, 2021 against the Commissioner of Social Security (the "Commissioner"). (Compl., Docket Entry No. 1.) Plaintiff seeks review of a final decision of the Commissioner denying his claim for Social Security disability insurance benefits under the Social Security Act (the "SSA"), pursuant to 42 U.S.C. § 405(g). (*Id.* at 1, 3.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, claiming that Administrative Law Judge Alan B. Berkowitz (the "ALJ") failed to properly weigh the medical opinion evidence and determine Plaintiff's residual functional capacity ("RFC"). (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 11; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 11-1.) The Commissioner cross-moves for judgment on the pleadings, arguing that the ALJ appropriately weighed the medical evidence and based Plaintiff's RFC on the entire record. (Comm'r's Cross-Mot. for J. on the Pleadings ("Comm'r Mot."), Docket Entry No. 14; Comm'r's Mem. in Supp. of Comm'r Mot. ("Comm'r Mem."), Docket Entry No. 14-1.)

For the reasons set forth below, the Court denies the Commissioner's cross motion for judgment on the pleadings, grants Plaintiff's motion for judgment on the pleadings, and orders the case be remanded for further administrative action.

**I. Background**

Plaintiff was born in 1971, (Certified Admin. R. ("R.") 39, Docket Entry No. 8), and completed four years of college, (R. 151). He was employed from July of 1990 to October of 2013 as a banking manager, and from September of 2013 to October of 2018 as a banking analyst. (R. 151–52.) Plaintiff applied for disability on June 8, 2019, alleging disability as of October 26, 2018, due to anemia, anxiety, ataxia, chronic-obstructive pulmonary disease (COPD), essential tremor, Fabry disease,[1] fatigue, gastroesophageal reflux disease (GERD) without esophagitis, heat intolerance, thyroid issues, and cough syncope. (R. 10, 36, 150–51, 158). The Social Security Administration denied his claim on December 9, 2019, (R. 84–88), and Plaintiff requested a hearing with an ALJ, (R. 105–06). A hearing was held on July 17, 2020. (R. 33–53.) By decision dated August 18, 2020, the ALJ determined that Plaintiff is not disabled. (R. 7–26.) On December 23, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering his decision final. (R. 1–5.) Plaintiff timely appealed to the Court. (*See* Compl.)

    a. **Hearing before the ALJ**

On July 17, 2019, Plaintiff appeared with counsel at a telephone hearing. (R. 33.)

---

[1] Fabry disease is a rare genetic condition in which an individual cannot produce enough of the enzyme that breaks down fat substances and prevents them from collecting in the blood vessels and tissues. The disease can cause buildup of the fat substances over time and can damage blood vessels, leading to issues such as heart failure, kidney failure, nerve damage, and strokes. There is currently no cure for the disease; it is treated with enzyme replacement therapy and oral chaperone therapy. *See Fabry Disease*, Cleveland Clinic (Aug. 21, 2023), https://my.clevelandclinic.org/health/diseases/16235-fabry-disease.

Vocational Expert ("VE") Elizabeth Laflamme also testified. (R. 33.)

### i. Plaintiff's testimony

Plaintiff stated that he was previously employed in computer systems maintenance and monitoring. (R. 39). He was laid off from his last job because he did not meet productivity requirements due to tremors and his inability to type and write. (R. 40–41.) Plaintiff continues to experience chronic tremors in his hands, and he has difficulty writing, typing, gripping, and holding onto objects. (R. 40–43.) He developed necrosis of his left hip and underwent a hip replacement. (R. 41.) He had COPD and experienced shortness of breath with exertion and his memory was impaired as a result of two strokes. (R. 44–46.) Plaintiff had a brain aneurysm that was being monitored by his neurologist, and he received enzyme infusions at home every Wednesday morning for sessions lasting one hour and forty-three minutes.[2] (R. 46–48.) The infusion left him fatigued and he usually slept following the procedure. (R. 48.) Plaintiff could sit for a maximum of two hours at a time and four hours total during an eight-hour workday. (R. 41–42, 46.) He could not stand too long due to balance issues, and could lift less than ten pounds, but did not have any trouble interacting with others. (R. 42–45.) He was constantly fatigued, took frequent naps during the day, and his wife did all the household chores. (R. 46.)

### ii. VE's testimony

The ALJ first asked the VE to assume a hypothetical claimant of Plaintiff's age, education, and vocational history who could perform sedentary work (1) with no exposure to extreme heat, unprotected heights, machines with moving parts, ladders, scaffolding, ropes; (2)

---

[2] Plaintiff's medical records also indicate that he receives 80 mg of Fabrazyme intravenously once per week. (*See, e.g.*, R. 369, 379, 396.)

3

where the individual can sit for 120[3] minutes at a stretch with a two minute break between stretches; (4) where the individual's tasks are limited to simple, routine, repetitive tasks and simple, work-related judgments and decisions; (5) where the individual need only understand, remember, and carry out short and simple instructions; and (6) where there are only occasional changes in a routine work setting and where the individual need not perform fast-paced work. (R. 15, 50–51.) The VE testified that such an individual could not perform either of Plaintiff's past jobs but that there were other sedentary, unskilled jobs that such a hypothetical individual could perform such as document preparer, addresser, and toy stuffer. (R. 50–52.) The ALJ asked whether there would be any jobs available to the same individual if the individual could work only four days per week. (R. 52.) The VE testified that there would be no jobs available to such an individual and that employers would allow one absence per month. (R. 52.)

### b. The ALJ's decision

The ALJ conducted the five-step sequential analysis required by the Social Security Act ("SSA"),[4] 20 C.F.R. § 416.920(a), and concluded that Plaintiff "has not been under a

---

[3] The hearing transcript indicates "420 minutes," (R. 50), however later in the discussion the ALJ referred to a hypothetical where the individual could "sit at two hour increments," (R. 52).

[4] The five-step sequential process outlined by the SSA considers:
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

disability . . . from October 26, 2018, through the date of th[e] decision." (R. 21.) In reaching his decision, the ALJ considered (1) the treatment records and medical opinions of Plaintiff's treating physicians: Dr. Jasjit Singh, (R. 348–63), Dr. Martin Bialer, (R. 395–98), and Dr. Giancarlo DeCarolis, (R. 364–75, 420–22); (2) the treatment records and opinions of two medical professionals retained by the Social Security Administration: Dr. Dana Savidge, (R. 387–93), and Dr. Steven Samuels, (R. 378–85); and (3) records from Dr. T. Inman, a review psychologist from the New York State disability agency, (R. 78–80).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2018, his alleged onset date. (R. 12.) At step two, the ALJ found that Plaintiff has severe impairments — chronic obstructive pulmonary disease (COPD), degenerative joint disease of the hip status post hip replacement, gastroesophageal reflux disorder (GERD), essential tremor, anxiety, a stroke, Fabry disease, and obesity. (R. 13.) At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (R. 14–15.) The ALJ concluded that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (R. 15.) He determined that Plaintiff is limited to sitting two hours at a time, followed by a two minute break; cannot be exposed to heights, unprotected machines with moving parts, and extreme heat; cannot climb ladders, scaffolds or ropes; is limited to simple routine repetitive tasks, simple work-related judgments, decisions, and instructions; can have no more than occasional changes in a routine work setting; can perform goal oriented work, but not fast-paced work; and would be absent from work one day a month. (R. 15.)

At step four, the ALJ found that the Plaintiff was "unable to perform any past relevant work." (R. 20.) At step five, the ALJ concluded that based on Plaintiff's age, education, work

5

experience, and RFC, Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 21.) The ALJ therefore concluded that during the relevant period Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 21–22.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)). In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at

112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "In making such determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion.'" *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

### b. The ALJ erred in determining Plaintiff's RFC

Plaintiff moves for judgment on the pleadings, arguing that the ALJ improperly discounted his established medical impairments. (Pl.'s Mem. 12.) In support, Plaintiff argues that the "[a]ll of the treating physicians confirm[ed] that [Plaintiff] experiences Fabry-related tremors," the ALJ himself "included tremors among [Plaintiff's] severe impairments," and Plaintiff "testified that he was discharged from his last job [because the] shaking of [his] hands made it impossible to perform satisfactorily." (*Id.*) Plaintiff argues that despite this evidence, "the ALJ's vocational inquiry ignored" Plaintiff's tremors and instead the ALJ "simply declared that the plaintiff can meet the physical demands of sedentary work." (*Id.*) In addition, Plaintiff argues that the ALJ failed to "properly . . . address the issue of [Plaintiff's] ability to attend work regularly." (*Id.* at 13.) In support, he argues that the ALJ concluded that he would be absent from work one day per month without providing an explanation for his conclusion or basing it in the record, even though the record is clear "that [Plaintiff] faces downtime one day per week because of the enzyme infusions." (*Id.*)

The Commissioner argues Plaintiff testified that he "had some issues using his hands due to tremors," (Comm'r's Mem. 2), "was laid off from his last job because he did not meet productivity requirements due to tremors and his inability to type and write," (*id.* at 3), and

7

"continue[s] to experience chronic shaking of the hands, and . . . ha[s] difficulty writing, typing, gripping, and holding onto objects," (*id.*). The Commissioner contends that the ALJ "properly based his RFC finding on the overall record" and that Plaintiff has not "establish[ed] that the record supported greater limitations, or that the ALJ's physical RFC was unsupported by substantial evidence." (*Id.* at 20–21.) With respect to Plaintiff's infusion treatments, the Commissioner argues that the ALJ "questioned Plaintiff at the administrative hearing about his infusion treatments" and in response, Plaintiff "testified that he received them each Wednesday and that they lasted for one hour and [forty-three] minutes." (Comm'r's Mem. 19–20.) The Commissioner argues that "Plaintiff has not shown that these treatments could not be accommodated outside of normal work hours" and that "it is Plaintiff's burden to prove a more restricted RFC than the RFC assessed by the ALJ." (*Id.* at 20.)

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1); *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015); *Penny Ann W. v. Berryhill*, No. 17-CV-1122, 2018 WL 6674291, at *4 (N.D.N.Y. Dec. 19, 2018). With respect to a claimant's physical abilities, an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). For example, "a limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* "In determining a claimant's RFC, '[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as

8

age, education, or work history.'" *Perez v. Berryhill*, No. 17-CV-3045, 2019 WL 1324949, at *4 (E.D.N.Y. Mar. 25, 2019) (alteration in original) (quoting *Crocco v. Berryhill*, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)); *see also Barry*, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." (quoting 20 C.F.R. § 416.945(a)(3))). An ALJ "may not 'arbitrarily substitute [his] own judgment for competent medical opinion.'" *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998)); *Santangelo v. Saul*, No. 18-CV-6199, 2019 WL 4409339, at *8 (W.D.N.Y. Sept. 16, 2019) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

An RFC of "[s]edentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*; *see, e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 n.1 (2d Cir. 2014) (noting that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about [two] hours of an [eight]-hour workday, and sitting should generally total approximately [six] hours of an [eight]-hour workday"). "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

9

### i. The ALJ failed to account for Plaintiff's tremors in his RFC

In determining Plaintiff's RFC, the ALJ failed to consider Plaintiff's tremors. At step two, the ALJ determined that Plaintiff had multiple severe impairments, including essential tremor. (R. 13.) The ALJ concluded that Plaintiff had the RFC to perform "sedentary work" with the limitation that Plaintiff "cannot tolerate exposure to heights, unprotected machines with moving parts, and extreme heat," "cannot climb ladders, scaffolds or ropes," "can sit for 120 minutes at one time, and then requires a two minute break," "is limited to simple routine repetitive tasks, simple work-related judgments and decisions, can understand, remember and carry out only short and simple instructions, can have no more than occasional changes in a routine work setting, and can perform goal oriented work, but not fast-paced work," and "would be absent from work one day per month." (R. 15.) Although "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions," SSR 83-10, 1983 WL 31251, at *5, the ALJ did not discuss any restrictions related to tremors, and by failing to do so, the ALJ did not address how Plaintiff's essential tremor affected his RFC. The ALJ therefore failed to "take [all of the plaintiff's impairments] into account when determining [the plaintiff's RFC]." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see Cummings v. Comm'r of Soc. Sec.*, No. 19-CV-2071, 2020 WL 4227536, at *10 (E.D.N.Y. July 23, 2023) (remanding where the ALJ did not ask the VE whether "medium work jobs existed in the national economy for an individual who had the exertional limitations and tremors" that plaintiff noted and "did not adequately explain her findings that plaintiff nevertheless could perform medium work"); *Goldsmith v. Berryhill*, No. 17-CV-483, 2018 WL 4328832, at *4 (S.D.N.Y. Sept. 11, 2018) (remanding for further proceedings where the ALJ did not appropriately weigh the medical evidence in light of the plaintiff's testimony that "her essential tremor and anxiety vary from day

to day").

### ii. The ALJ failed to consider Plaintiff's infusions in determining his RFC

In determining Plaintiff's RFC, the ALJ failed to consider the effects of Plaintiff's Fabry disease-related infusion treatments. At step two, the ALJ determined that Plaintiff had multiple severe impairments, including Fabry disease. (R. 13.) At the hearing, Plaintiff testified that his weekly infusions last for one hour and forty-three minutes, (R. 48), and his medical records reflect that he receives 80 mg of Fabrazyme intravenously once per week, (*see, e.g.*, R. 369, 379, 396). Plaintiff testified that the infusions are performed by a visiting nurse, who usually arrives around 9:30 AM and leaves around 11:30 AM on Wednesdays, and that he is usually "very fatigued" after the infusions and "normally go[es] to sleep right after," wakes up around 6:00 PM, and feels like himself again only around "[m]idday the next day."[5] (R. 48–49.) The ALJ subsequently asked the VE whether there would be any jobs available in the national economy to an individual with Plaintiff's profile who could perform only sedentary work with certain limitations and could "work only four days per week." (R. 50–52.) The VE responded that there would be no jobs available to such an individual and further elaborated that most companies "allow one absenteeism per month." (R. 52.) However, in his decision, the ALJ determined that Plaintiff had a RFC where he "would be absent from work one day per month," (R. 15), but did

---

[5] Plaintiff's counsel stated that prior to his disability Plaintiff had been "working at home two days a week because of the fact that he gets infusions one day a week, and he wasn't capable of going to work on the day and the day after the infusion which was always performed on a Wednesday which is why he was always home on . . . Wednesdays and Thursdays." (R. 36–37.) Plaintiff's counsel directed the ALJ to Plaintiff's treatment notes and indicated that "in the medications, it notes the Fabry disease intravenous solution." (R. 38.) The ALJ then posed additional questions to Plaintiff's counsel regarding the length of the infusion treatments, the frequency of the treatments, and the amount of time their aftereffects impaired Plaintiff's ability to work. (R. 38.)

11

not explain how he arrived at the determination. In his decision, the ALJ did not address Plaintiff's infusions and also did not discuss Plaintiff's testimony that the infusions left him "in a weakened state for a [twenty-four] hour period." (R. 134.) The ALJ's failure to explain how he arrived at his determination that Plaintiff would be absent one day per month when the evidence suggests one day per week, failure to consider Plaintiff's testimony regarding the side effects of his infusions, and failure to consider the medical evidence in the record related to Plaintiff's infusions all undermine the ALJ's RFC determination. In addition, it is inconsistent with the ALJ's determination that Fabry disease is one of Plaintiff's "severe impairment[s]." (R. 13.) Enzyme infusions are one of the primary methods for treating Fabry disease, *see supra* note 1, and the ALJ's failure to consider the side effects of Plaintiff's treatment program on his ability to work warrants remand. *See, e.g.*, *Bruzdoski v. Comm'r of Soc. Sec.*, No. 21-CV-6271, 2023 WL 4745957, at *7 (E.D.N.Y. July 25, 2023) (remanding where the ALJ erred in his consideration of the medical evidence including evidence that Plaintiff treated a chronic condition with medical infusions that took "approximately three hours to administer and result[ed] in [the plaintiff] feeling fatigued for a day or two after"); *Emily J.T. v. Kijakazi*, No. 22-CV-84, 2023 WL 2474790, at *4, *8 (N.D.N.Y. Mar. 13, 2023) (remanding where the ALJ erred in his consideration of the medical evidence including evidence that Plaintiff regularly received "intravenous iron infusions" to treat her chronic iron deficiency anemia); *Santangelo*, 2019 WL 4409339, at *8 (noting that when an ALJ "makes an RFC determination in the absence of supporting expert medical opinion" he or she has "has committed legal error").

Accordingly, because the ALJ failed to account for any functional limitations associated with Plaintiff's tremors and Fabry disease-related infusion treatments in determining Plaintiff's RFC, the Court remands the case for further consideration. *See Monteith v. Comm'r of Soc. Sec.*,

No. 20-CV-1648, 2021 WL 2895655, at *3 (E.D.N.Y. July 9, 2021) ("The failure to take [all of plaintiff's impairments] into account in the RFC determination is grounds for remand."); *Ann P. v. Saul*, No. 19-CV-711, 2021 WL 671894, at *6 (W.D.N.Y. Feb. 22, 2021) (remanding for the ALJ to examine whether the plaintiff's condition was "severe or non-severe in nature, and the limiting effects it may have on [the plaintiff's] RFC assessment").[6]

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is directed to close this case.

Dated: October 5, 2023
       Brooklyn, New York

SO ORDERED:

          s/ MKB
MARGO K. BRODIE
United States District Judge

---

[6] Because the Court remands the case for further consideration based on the ALJ's failure to consider Plaintiff's severe impairment of tremors and the effect of his Fabry disease-related infusions, the Court declines to address the parties' arguments regarding the Commissioner's consideration of the medical opinion evidence.